UNITED STATES of America

v.

Daniel J. FLOOD.

Crim. Nos. 78–543, 78–561.

United States District Court,
District of Columbia.

Oct. 30, 1978.

Mark H. Tuohey, III, Sp. Trial Atty., Organized Crime and Racketeering Section, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Axel Kleiboemer, Washington, D. C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

On October 27, 1978 the Government filed a Motion for Leave to File Documents and a Motion for Leave to File Documents Under Seal. I have considered these motions after conferring in chambers with counsel for both parties about the subject matter of the documents proffered with the motions. Transcripts of these conferences are being filed with the Clerk of the Court and the Government's motions are being granted.

The documents to be filed pursuant to the Government's motions relate to a criminal tax investigation considered by the Tax Division of the Department of Justice in 1964 when I was Assistant Attorney General in charge of the Division. The documents to be filed publicly are:

(1) a Federal Bureau of Investigation Memorandum of October 27, 1978, recounting an October 26 interview (as supplemented on October 27) of a former Tax Division attorney who had initial responsibility in the Division for the 1964 matter. This memorandum sets out his chronology of the Division processing of the matter as evidenced by the official Department of Justice file which was made available to him for purposes of the interview.

(2) a Xerox copy of an April 1978 article appearing in the Wilkes-Barre (Pa.) Tribune Review about the 1964 tax investigation, among other things.

(3) a Xerox copy of a June 30, 1964 letter and memorandum addressed to Congressman Daniel J. Flood by one of the taxpayers involved in the 1964 investigation.

(4) a Xerox copy of a note represented to be in Congressman Flood's longhand about a September 21, 1964 telephone conversation with me.

The documents under seal constitute the official Department of Justice file (# 5–63–414). The file consists, in relevant part, of the internal investigative and prosecution memoranda written in 1964 by the Tax Division lawyers who participated in the matter.

These documents show that in the course of considering the matter between May and September 1964 some Tax Division lawyers recommended criminal prosecution and some opposed it. Consideration ended September 9, 1964, when the First Assistant, acting as head of the Division (in my absence), approved a final staff recommendation not to prosecute. By September 21, 1964, this decision had been reported to the Criminal Division of the Department of Justice and to the local United States Attorney, but had not been reported to the taxpayers nor to their lawyer. A September 21, 1964 memorandum in the sealed file, bearing my initials and apparently initialed by me, indicates that on that date I received a telephone call from Congressman Flood in which he requested Division consideration of the economic impact of the prosecution of the taxpayers on his district because their company was the largest employer there. The memorandum indicates that in response I advised the Congressman of the reluctance of the Tax Division to discuss a pending criminal case (except with the taxpayer's lawyer) and further advised him that a Division lawyer would be in touch with the taxpayers' lawyer. The September 21 memorandum concludes with my request to the Chief of the Tax Division Criminal Section that he proceed to advise taxpayers' counsel of the disposition (previ-

ously made for the Division on September 9 by the First Assistant).

On my own motion I have carefully considered whether, in light of the foregoing, including the April 1978 newspaper article, I should disqualify myself from trying the Flood case because my impartiality could reasonably be questioned. *See* 28 U.S.C. § 455.*

It is obvious and understandable that the April 1978 newspaper article was written without the benefit of much of the information which is now being filed in Court—on the public record and under seal. In addition, counsel for the Government has represented that, despite suggestions to the contrary in the article, neither of the taxpayers investigated in 1964 will be involved as a witness, or otherwise, in the case now pending with respect to Congressman Flood.

██ In any event, I have concluded from a review of the public documents and of the sealed ones as well as from the conferences with counsel for both parties that my impartiality could not reasonably be questioned so as to justify my disqualifying myself pursuant to 28 U.S.C. § 455(a). This decision not to disqualify is, however, necessarily based in substantial part upon *in camera* consideration of sealed Tax Division memoranda. This fact raises the question of whether it would be appropriate for me to retain this case without making available for public scrutiny the relevant Tax Division memoranda about the 1964 case which I have considered in deciding not to disqualify in this case. I conclude that it would not be appropriate for me to try such an important and sensitive case unless those memoranda were in the public record. *Compare* 28 U.S.C. § 455(e).

██ It is, of course, theoretically possible to place the memoranda there. But the Government contends, and I agree, that

publication of them is precluded by the Privacy Act and the Freedom of Information Act, 5 U.S.C. §§ 552, 552a. The 1964 case was never prosecuted criminally. Facts and unproved allegations of criminal conduct by the taxpayers discussed in the memoranda were never presented to a grand jury. Furthermore, publication of the internal memoranda now could impair the future free exchange of ideas and arguments between Tax Division lawyers responsible for recommendations for and against criminal prosecution of taxpayers. In the unusual circumstances here, even if the law were otherwise, it would be neither fair nor in the public interest to risk exposing the Tax Division and the taxpayers involved in the 1964 investigation to the possible side effects of publication of the memoranda.

The Flood case is in a very preliminary stage; the trial date is just being set. Such an important and sensitive case ought to be conducted as nearly free as possible from side issues which might attract additional pre-trial publicity. I have twelve eminent and able colleagues who could try this case fairly and efficiently without this particular side issue. Accordingly, I am exercising my discretion under our Local Rules and practice to transfer the Flood case to the Calendar Committee for reassignment to another judge. *See U.S.Dist.Ct.R.* 3–5(a).

### ORDER

The above-entitled matter came before the Court for the setting of a trial date, the defendant having previously been arraigned and pleaded not guilty. The defendant and his counsel have each represented in open court that the defendant would waive application of the statute, 18 U.S.C. 3161 *et seq.,* and local Court Rules, *U.S.Dist.Ct.R.* 2–7, pertaining to speedy trial. Thereafter, with the concurrence of the parties, this

---

* 28 U.S.C. § 455(a) and (e) provide that:

    (a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

   .    .    .    .    .

    (e) No justice, judge, magistrate, or referee in bankruptcy shall accept from the parties

to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

102

Court set January 15, 1979, as the date for trial with the expectation that the United States will promptly subpoena its witnesses for a trial commencing that date.

■ The indictment originally filed in this Court alleges a number of complex transactions involving several different persons. It has since been consolidated for trial with a second case originally filed in the Central District of California. The Court hereby finds from the face of the indictment and representations of counsel that the ends of justice served by setting the trial on January 15, 1979, outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. 3161(h)(8)(A). In support of this finding the Court has considered and concluded that failure to grant this continuance (i) would be likely to result in a miscarriage of justice and (ii) that the case taken as a whole is so unusual and complex, due to the nature of the prosecution, that it is unreasonable to expect adequate preparation within the periods established by law. 18 U.S.C. 3161(h)(8)(B). Accordingly, it is hereby

ORDERED: That the period of delay resulting from the continuance of the trial to January 15, 1979, shall be excluded in computing the time within which the trial in this case must commence.