**Sherwood C. MARTIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 265–81C.**

United States Claims Court.

March 17, 1983.

Paul K. Geer, Pittsburgh, Pa., for plaintiff, Frederick J. Frances, Pittsburgh, Pa., of counsel.

Michael D. Morin, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

ORDER

SPECTOR, Judge:

This opinion treats with (and hopefully concludes) an unnecessarily long discovery proceeding in this case.

*Statement of the Case*

In May of 1979, plaintiff leased a parcel of improved real estate to defendant, acting through the National Park Service, Department of the Interior. As relevant to this case the agreement provides:

9. DAMAGES. * * * Tenant agrees to * * * save the Lessor harmless from all * * * damage * * * to the property * * * resulting from any act done or omission by or through the Tenant or resulting from the Tenant's use, non-use * * * or conduct of its business in the Premises.

    *       *       *       *       *       *

12. SECURITY. Tenant hereby agrees that it shall * * * employ such third parties as are necessary to insure that there is a security guard present on the Premises, on a twenty-four (24) hour basis * * *. * * * The security guard or guards shall be deemed to be agents of Tenant and not Lessor. Tenant hereby agrees to indemnify and save Lessor harmless from any and all damages * * * relating to or arising from the employment of such security guards or arising from their presence on the Premises.

In furtherance of that provision, defendant hired Nick J. Buncic, Steven D. Buncic and Robert A. Ottaviani as caretaker/security guards. Thereafter, on June 29, 1979, July 1, 1979 and July 2, 1979, three fires of suspicious origin damaged two of the buildings on the leased property.

Plaintiff as lessor filed suit for breach of the lease. The petition alleges that:

10. The defendant has breached the aforementioned provisions of the lease in:

A. Failing to conduct a reasonable and adequate background investigation prior to employing security guards for the premises;

B. Failing to provide adequate locks on doors;

C. Failing to provide competent security guards;

D. Failing to provide a sufficient number of security guards so as to adequately protect the property from vandalism, arson, and other hazards;

E. Failing to adequately educate and train its employees as to the proper means of protecting property from acts of arson, vandalism, and other hazards;

F. Failing to provide sufficient and adequate fire extinguishers and other fire safety equipment on the premises;

G. Failing to increase security measures following the fire on July 29, 1979;

H. Failing to increase security following the fire on July 1, 1979;

I. Failing to hold harmless and indemnify Lessor-plaintiff when it knew or should have known that plaintiff's damages were caused or contributed to by the intentional reckless or negligent acts and omissions of defendant's employees;

J. Otherwise failing to hold harmless and indemnify plaintiff for damages suffered in the fire as required by the above mentioned contractual provision;

K. Otherwise failing to use reasonable care in fulfilling its duties and obligations under the lease.

Plaintiff filed a Motion for Production of Documents which dealt in large part with the civilian employment files of the three security guards defendant had employed, plus the military records of one of them, Mr. Ottaviani. Defendant objected on the grounds firstly that plaintiff failed to show "with reasonable particularity * * * how or in what respect [the documents] are relevant to the issues of the case in terms of discovery or proof * * *," and secondly that disclosure of the above-mentioned materials was prohibited by the Privacy Act of 1974, 5 U.S.C. § 552a. In reply, plaintiff supplemented his statement of relevance in pertinent part as follows:

\*       \*       \*       \*       \*       \*

E. [Documents concerning the application and employment files of the three named individuals] will reflect whether the application and employment files gave notice that one of its employees may be a potential arsonist and/or a problem employee.

F. and G. [Re: Air Force file on Mr. Ottaviani] Robert Warren has testified at his deposition on page 19, that Robert Ottaviani had to show proof that he was in the military and that he had an honorable discharge and that Robert Ottaviani had to produce the document reflecting the honorable discharge. Mr. Warren has testified further at page 20 that he later received information that questionable circumstances surrounded the discharge of Robert Ottaviani in that Robert Ottaviani may have been discharged for mental problems. The documents requested in Category G are therefore relevant to determine whether the Government had either actual or constructive notice that the Government was hiring a person with mental problems as a security guard.

H. [Documents concerning the prior employment of the security guards] may well be relevant to show that the Government had actual or constructive notice of problems encountered by former employers.

\*       \*       \*       \*       \*       \*

J. [Documents concerning Robert Ottaviani's discharge or termination] are relevant to determine whether Mr. Ottaviani was discharged for setting the three fires.

Order of February 12, 1982 ruled in pertinent part as follows:

It is apparent that court-ordered disclosure of the requested documents is essential to plaintiff's case and that such disclosure will violate neither the letter nor the spirit of the Privacy Act. It is within the court's discretion to order the production of the documents pursuant to 5 U.S.C. § 552a(b)(11). Therefore, plaintiff's motion as to documents requested in paragraph 1, subparagraphs E, F, G, H, J, M, and O, is allowed, but only to the extent that the documents are relevant to the issues as plaintiff has refined and narrowed them in its reply to defendant's response.

Following defendant's request for reconsideration, the attached opinion March 25, 1982 (Appendix A) dealt with the Privacy Act issue in detail, and concluded the Order of February 12, 1982, should be reaffirmed. Defendant's request for interlocutory review was denied July 16, 1982.[1] Thereafter, a proposal by counsel "that relevancy deter-

---

1. By the U.S. Court of Claims, the appellate function of which has now been merged in the U.S. Circuit Court for the Federal Circuit.

(Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25).

mination should be made by [the court] based upon an *in camera* review of the documents * * * "[2] was adopted by the court.

### Scope of Review

As earlier noted the February 12 and March 25, 1982 orders allowed plaintiff's motion to produce "but only to the extent that the documents are relevant to the issues as plaintiff has refined and narrowed them in its reply to defendant's response." Relevant evidence is defined as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[3] Rule 26(b)(1) of this court permits—

> * * * discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * *. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Defendant has previously suggested that because plaintiff's reply names Mr. Ottaviani as a "prime suspect," all information regarding the Buncics is irrelevant. But this does not follow. The possibility of arson is not the only issue which plaintiff has raised, and he should not be precluded from pursuing complementary or alternative theories as set forth in his petition, earlier quoted. The "relevant issues" are those set forth in the petition, and further explained in these motion papers.

### Conclusions Following *In Camera* Examination

With respect to the civilian employment files, plaintiff has a legitimate interest in discovering the content of the file itself as well as the specific documents found to be relevant. The contents of the file are indicative of the extent of the background check made by defendant, and hence of its actual knowledge at the time of employment. Consequently, all employment documents submitted by defendant are listed below along with a conclusion as to their relevance or irrelevance.

### A. STEVEN D. BUNCIC

Defendant has submitted 11 documents, which are marked SDB–1 through SDB–11. They are responsive to items 1(E) and 1(H) in plaintiff's Motion for Production of Documents.

| | Document | Date | Conclusion |
| --- | --- | --- | --- |
| SDB–1 | Declaration of Appointee | 5/24/79 | Relevant |
| SDB–2 | Personal Qualifications Statement | 5/23/79 | Relevant |
| SDB–3 | Seasonal Employee Evaluation & Rehire Recommendation | 9/17/79 | Relevant |
| SDB–4 | Request for Temporary Appointment | 5/24/79 | Not Relevant |
| SDB–5 | Appointment Affidavits | 5/24/79 | Not Relevant |
| SDB–6 | W–4 Form | | Not Relevant |
| SDB–7 | Temporary Appointment-Intermittent | 5/30/79 | Not Relevant (Admitted by Defendant) |
| SDB–8 | Authorization for Direct Mailing of Salary | 6/1/79 | Not Relevant |
| SDB–9 | Request for Personnel Action-Resignation | 10/30/79 | Not Relevant (Admitted by Defendant) |
| SDB–10 | Notification of Personnel Action-Resignation | 11/1/79 | Not Relevant (Admitted by Defendant) |
| SDB–11 | Notification of Personnel Action-Pay Adjustment | 1/16/80 | Not Relevant |

### B. NICK J. BUNCIC

Defendant has submitted 11 documents which are marked NJB–1 through NJB–11. They appear to be from a personnel file, and are responsive to requests 1(E) and 1(F) in plaintiff's Motion for Production of Documents.

| | Document | Date | Conclusion |
| --- | --- | --- | --- |
| NJB–1 | Declaration of Appointee | 5/24/79 | Relevant |
| | Seasonal Employee Evaluation & Rehire | | |

---

2. Letter of Charles L. Schlumberger dated July 26, 1982.

3. Rule 401 of the Federal Rules of Evidence.

| | Document | Date | Conclusion |
|---|---|---|---|
| NJB–2 | Recommendation | 9/17/79 | Relevant |
| NJB–3 | Personal Qualifications Statement | 5/23/79 | Relevant |
| NJB–4 | Request for Personnel Action-Temporary Appointment | 5/24/79 | Not Relevant |
| NJB–5 | Appointment Affidavits | 5/24/79 | Not Relevant |
| NJB–6 | W–4 Form | 5/24/79 | Not Relevant |
| NJB–7 | Temporary Appointment-Intermittent | 5/30/79 | Not Relevant (Admitted by Defendant) |
| NJB–8 | Authorization for Direct Mailing of Salary | 6/1/79 | Not Relevant |
| NJB–9 | Request for Personnel Action-Resignation | 10/30/79 | Not Relevant (Admitted by Defendant) |
| NJB–10 | Notification of Personnel Action-Resignation | 11/1/79 | Not Relevant (Admitted by Defendant) |
| NJB–11 | Notification of Personnel Action-Pay Adjustment | 1/16/80 | Not Relevant |

## C. ROBERT A. OTTAVIANI

Defendant has submitted Mr. Ottaviani's personnel file consisting of 20 documents which are marked RAO–1 through RAO–20, and responsive to requests 1(E), 1(F), 1(G), 1(H), 1(J), 1(M) and 1(O) in plaintiff's Motion for Production of Documents.

| | Document | Date | Conclusion |
|---|---|---|---|
| RAO–1 | Declaration of Appointee | 5/17/79 | Relevant |
| RAO–2 | Personal Qualifications Statement | Undated | Relevant |
| RAO–3 | Honorable Discharge | Date Illegible | Relevant |
| RAO–4 | Physical Fitness Inquiry for Motor Vehicle Operators | 5/23/79 | Relevant |
| RAO–5 | Notification of Personnel Action | 8/6/79 | Relevant |
| RAO–6 | Request for Personnel Action-Termination | 7/30/79 | Relevant |
| RAO–7 | Discussion with Nick Buncic | 6/28/79 | Relevant |
| RAO–8 | Memorandum-Notice of Termination | 7/27/79 | Relevant |
| RAO–9 | Seasonal Employee Evaluation & Rehire Recommendation | 7/28/79 | Relevant |
| RAO–10 | Unsigned notes re: Ottaviani's prior employment problems | Undated | Relevant |
| | Notice of Personnel Action-Temporary | | Not |

| | Document | Date | Conclusion |
|---|---|---|---|
| RAO–11 | Appointment | Undated | Relevant |
| RAO–12 | Request for Personnel Action-Temporary Appointment | Undated | Not Relevant |
| RAO–13 | Certificate of Medical Examination | 5/31/79 | Not Relevant |
| RAO–14 | Appointment Affidavits | 5/17/79 | Not Relevant |
| RAO–15 | W–4 Form | 5/17/79 | Not Relevant |
| RAO–16 | Authorization for Direct Mailing of Salary | 6/1/79 | Not Relevant |
| RAO–17 | Application for Motor Vehicle Operator's Identification Card | 5/23/79 | Not Relevant |
| RAO–18 | Memorandum-Notice of Termination | 7/27/79 | Relevant (Unsigned copy of RAO–8) |
| RAO–19 | Letter requesting time off to attend classes | 7/17/79 | Not Relevant |
| RAO–20 | Illegible copies of entries in Ottaviani's military file | | Relevant |

## D. AIR FORCE RECORDS

Air force records have been submitted in response to requests 1(F) and 1(G) in plaintiff's Motion for Production of Documents. The contents of these military records are not fully listed because they have a higher privacy value than the civilian personnel records. However, plaintiff has alleged that defendant either had constructive knowledge of the file's contents or that a proper investigation prior to employment would have led to these records. Those documents deemed relevant are marked AF–1 through AF–12.

| | Document | Date | Conclusion |
|---|---|---|---|
| AF–1 | Administrative Discharge | 1/23/67 | Relevant |
| AF–2 | Letter of Notification | 12/22/66 | Relevant |
| AF–3 | Acknowledgement of Receipt of Letter of Notification | 12/22/66 | Relevant |
| AF–4 | Statement of Airman | 12/22/66 | Relevant |
| AF–5 | AF Form 548 | 1/20/67 | Relevant |
| AF–6 | Physical Profile Serial Report | 12/9/66 | Relevant |
| AF–7 | Medical Statement | 12/12/66 | Relevant |
| AF–8 | Letter of Maj. Jack W. Taylor | Undated | Relevant |
| AF–9 | AF Form 7 Airman Military Record | Undated | Relevant |

| Document | Date | Conclusion |
|---|---|---|
| AF–10 | Report of Medical History | 12/30/66 | Relevant |
| AF–11 | Untitled (part of an annual progress report) | 9/65 | Relevant |
| AF–12 | Untitled (part of an annual progress report) | 9/66 | Relevant |

All of the foregoing documents designated as relevant are ORDERED to be produced in response to plaintiff's Motion for Production of Documents, and the above-cited orders of February 12 and March 25, 1982. In each case it has been concluded that the document in question has relevance bearing on defendant's care and scope of investigation in employing the individuals in question as caretaker/security guards; their competence to perform such tasks; their performance rating while so employed; and reasons for termination of their employment.[4]

IT IS FURTHER ORDERED that no use be made of these documents except as may be necessary in connection with this litigation. Many of the documents provided for *in camera* inspection were virtually illegible and therefore every effort should be made to furnish legible documents to plaintiff.

IT IS SO ORDERED.

## APPENDIX A

IN THE UNITED STATES COURT OF CLAIMS
Trial Division
No. 265–81C

(Filed: March 25, 1982)

SHERWOOD C. MARTIN ) Motion for production of documents; Privacy Act defense; exception to Act in 5 U.S.C. § 552a(b)(11) when disclosure is pursuant to court order.
v. )
THE UNITED STATES )

## ORDER OF TRIAL JUDGE ON DEFENDANT'S REQUEST FOR RECONSIDERATION OF ORDER FOR PRODUCTION OF DOCUMENTS

Defendant requests reconsideration of the February 12, 1982 order for the production of documents. Particular concern is

4. *See* and *cf.* facts in *Appeal of Simpson Transfer & Storage Corp.* ASBCA No. 24750, 82–2 BCA (CCH) ¶ 15,949 (July 14, 1982), *aff'd, Simpson Transfer & Storage Corp. v. United States,* No. 55–82 (Fed.Cir. March 2, 1983) (Unpublished).

expressed that the Privacy Act of 1974 prohibits the disclosure of certain employment and military records.

At issue in this case is section 3(b) of the Privacy Act of 1974, 5 U.S.C. § 552a(b) (1976), which relates to the disclosure of the types of documents that plaintiff seeks. That section provides:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.

There are, however, eleven exceptions under which disclosure may be permitted. They include exception 11, permitting disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b) (11).

The legislative history of the Privacy Act is abbreviated and sketchy.[1] References to exception 11 are particularly sparse. The following is an accurate summary of the legislative history on exception 11:

The present exception 11 was not included in either the Senate or House Bills and is, therefore, not discussed in the Senate and House Reports. There was no Conference Report. * * * The first reference to the provision in the congressional debate is in a recitation of the House bill in the Senate on December 17, 1974. * * However, there is no discussion of the provision either on that date or in subsequent debates on the House and Senate Bills.[2]

Consequently, there is no authority on this subject other than that developed by the courts in a handful of cases.

As a general proposition, courts have held that the Privacy Act's protection is to be broadly construed.

1. *See Voelker v. IRS,* 646 F.2d 332, 334 n. 3 (8th Cir.1981); *Zeller v. United States,* 467 F.Supp. 487, 498 (E.D.N.Y.1979).

2. *Bruce v. United States,* 621 F.2d 914, 916 n. 4 (8th Cir.1980) (citations omitted).

Section (b) of the Privacy Act prohibits the disclosure by the agency of any reports to any person without prior written consent of the individual unless disclosure is specifically provided for in the Act.[3]

Therefore, in this case disclosure without consent of the individuals involved would not be warranted, unless such disclosure falls within the rather broad limits of exception 11. A discussion of the cases dealing with that exception serves to focus the issue.

In *Christy v. United States,*[4] plaintiff was allegedly raped by an inmate at a federal prison while she was visiting another inmate. She sued the Government for negligence in assigning her attacker to a minimum custody institution, even though he had previously been convicted of violent crimes. In her suit, plaintiff sought the inmate's criminal record which the Government withheld presumably to protect the alleged rapist's privacy. The court ordered disclosure of the record on the ground that the Privacy Act had not yet taken effect. But it also held:

> Even if it were law, another easy answer would remain. The bill provides, in what will be 5 U.S.C. § 552a(b)(11), that certain disclosures of personal data are prohibited "unless disclosure of the record would be pursuant to the order of a court of competent jurisdiction."

Rule 504(b) of the Federal Rules of Evidence provides:

> In cases in which character or a trait of character of a person is an essential element of a * * * claim * * *, proof may also be made of specific instances of his conduct.

In light of this rule, the information sought is discoverable.[5]

In *United States v. Flood,*[6] the presiding judge's impartiality was challenged because as an assistant attorney general 14 years earlier he had considered possible prosecution of the defendant in a different case. In deciding whether he was impartial, the judge reviewed a number of records, including memoranda, which had figured in the previous case. He finally disqualified himself on the ground that he could not then properly hear the case unless the earlier memoranda were included in the record, and the Privacy Act forbade the publication of the memoranda. He provided a rationale for his decision by pointing out that the earlier case was "never prosecuted criminally. Facts and unproved allegations of criminal conduct by the taxpayers discussed were never presented to a grand jury."[7] Furthermore, publication would "impair the future free exchange of ideas and arguments" among Government attorneys responsible for recommending prosecutions.[8]

In *United States v. Brown,*[9] a criminal defendant sought the Bureau of Prisons records of several codefendants. The trial court refused to order the production of the requested records, but was reversed by the Court of Appeals, which stated:

> But this provision [5 U.S.C. § 552a] contains several exceptions. Included in these exceptions are provisions which require disclosure if the material is required to be disclosed under § 552 (FOIA) or if it is ordered released by a court. 5 U.S.C. § 552a(b)(2) and (11). Either or both of these exceptions apply in this case. Therefore, the Privacy Act does not prevent discovery.[10]

*Harbolt v. Department of State,*[11] focused on a federal inmate's Freedom of Informa-

3. *Abramsky v. Consumer Products Safety Commission,* 478 F.Supp. 1040, 1041 (S.D.N.Y. 1979). *See also Local 2047 v. Defense General Supply Center,* 423 F.Supp. 481, 485–86 (E.D. Va.1976), *aff'd,* 573 F.2d 184 (4th Cir.1978).

4. 68 F.R.D. 375 (N.D.Tex.1975).

5. *Id.* at 378.

6. 462 F.Supp. 99 (D.D.C.1978).

7. *Id.* at 101.

8. *Id.*

9. 562 F.2d 1144 (9th Cir.1978).

10. *Id.* at 1152 (citation omitted).

11. 616 F.2d 772 (5th Cir.), *cert. denied,* 449 U.S. 856 [101 S.Ct. 154, 66 L.Ed.2d 71] (1980).

tion Act ("FOIA") request for the number of United States citizens imprisoned abroad for narcotics offenses, and a list of their names and addresses. The State Department provided the statistical information but refused to supply the requested names and addresses, many or all of which it had received under the provisions of the Privacy Act. The court applied an FOIA balancing test, in which it weighed the public's interest in disclosure against the detainees' right to privacy "in order to determine whether disclosure would mean 'a clearly unwarranted invasion of personal privacy.' *Department of Air Force v. Rose,* 425 U.S. 352, 372–73 [96 S.Ct. 1592, 1605, 48 L.Ed.2d 11] * * * (1976)." [12] It determined that the detainees' right to privacy outweighed the requester's right to information, and declined to order disclosure in that case.

Although all the foregoing cases had some relation to criminal acts, exception 11 orders have also required the disclosure of personnel information under more routine circumstances. In *Clymer v. Grzegorek,* [13] for example, a court ordered the Government's disclosure to plaintiff's attorney of the names and addresses of several employees who were defendants in that case so that service of process could be made on them. And in *Weahkee v. Norton,* [14] the court permitted the discovery of personnel files so that plaintiff could attempt to prove that agency officials had used discriminatory employment practices against him. "The qualifications and job performance of these employees in comparison with the plaintiff's qualifications and performance is at the heart of this controversy." [15]

These cases demonstrate that a court has the power under 5 U.S.C. § 552a(b)(11) to order disclosure. There is, furthermore, a compelling public interest in protecting plaintiff's right to litigate in this court. Without disclosure of the requested documents in this case, it is doubtful that the public interest can be protected. It is therefore well within the court's discretion to order disclosure.

The cases also show, however, that the court must guard against abuses of an individual's privacy interests. Therefore, defendant shall comply with the order of February 12, by producing the documents in question, "but only to the extent that the documents are relevant to the issues as plaintiff has refined and narrowed them in its reply to defendant's response." (Order of February 12, 1982). [16]

Consistent with the foregoing, defendant's request for reconsideration is denied, and the order of February 12 remains in effect.

/s/ Louis Spector
Louis Spector
Trial Judge

---

12. *Id.* at 775.

13. 515 F.Supp. 938 (E.D.Va.1981).

14. 621 F.2d 1080 (10th Cir.1980).

15. *Id.* at 1082. *But cf. Stiles v. Atlanta Gas Light Co.,* 453 F.Supp. 798 (N.D.Ga.1978) (court refused to order disclosure of information relating to an estoppel defense that could be used validly only against a non-party, the Government, rather than against the defendant, therefore rendering the information useless to plaintiff in the preparation of its case). Defendant has overemphasized the importance of *Stiles.* The overriding feature there was a court's refusal to recognize a subpoena duces

tecum, obtained independently of the court, as a court order within the meaning of exception 11. The situation is different here where the court has itself specifically ordered that the requested documents be produced, citing compelling reasons for its order.

16. In *National Presto Industries, Inc.,* 216 Ct.Cl. 422, 424 (1978), the court provided for notification to third parties that certain documents relating to them were to be disclosed. That protection was furnished under circumstances unique to contract renegotiation cases, and is not appropriate in a case such as this one.